IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2016

**IN RE I.E.A., ET AL.**

**Appeal from the Juvenile Court for Shelby County**
**No. AA3892  Dan H. Michael, Judge**

_____

**No. W2016-00304-COA-R3-PT – Filed July 20, 2016**

_____

The case involves the termination of Mother's parental rights on the ground of severe abuse. The trial court terminated Mother's parental rights to the two children at issue based on two previous severe abuse findings against Mother: (1) a finding as to the children at issue during the dependency and neglect portion of the underlying proceedings; and (2) a finding that the children's older half-sibling was the victim of severe abuse prior to the children at issue's birth.  The trial court further found clear and convincing evidence that termination was in the children's best interest. Although we conclude that the trial court erred in relying on a non-final order as *res judicata* of the ground of severe abuse, we find that the trial court did not err in relying on a prior final order of severe abuse as to the children at issue's half-sibling. We also affirm the trial court's finding that termination of Mother's parental rights is in the children's best interests.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part; Affirmed in Part; and Remanded.**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, and RICHARD H. DINKINS, JJ., joined.

James Franklin, Jr., Memphis, Tennessee, for the appellant, Melissa G. A.

Herbert H. Slatery, III, Attorney General and Reporter; and Alexander S. Rieger, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**Background**

This case involves the termination of Respondent/Appellant Melissa G.A.'s ("Mother") parental rights to her twin daughters, I.E.A. and I.L.A. ("the children" or "the twins"), born in 2014. On August 7, 2014, Petitioner/Appellee Tennessee Department of Children's Services ("DCS") filed a petition in the Shelby County Juvenile Court to find the twins dependent and neglected.[1] The petition alleged that the children were taken into DCS custody immediately after their birth when Mother tested positive for marijuana during the delivery. The petition indicated that Mother denied using marijuana, but admitted to using cocaine prior to learning about her pregnancy. According to the petition, the children were administered meconium tests, which tested positive for cocaine.[2] The petition alleged that, as a result, the children were the victims of severe abuse.

On April 9, 2015, E.F.T. ("Intervening Petitioner"), a non-relative who had previously had custody of the twins' half-sibling, filed a petition to intervene. The intervening petition asked that custody of the twins be awarded to her, rather than DCS.

On June 28, 2015, a juvenile court magistrate held a hearing on the dependency and neglect petition. The magistrate's findings and recommendations were filed on August 13, 2015. Relevant to this appeal, the magistrate adjudicated the children dependent and neglected and the victims of severe abuse based upon clear and convincing evidence. The magistrate also denied the intervening petition. The findings and recommendation outlined the procedure for appealing the finding to the juvenile court judge.

Intervening Petitioner filed a timely motion for rehearing of the magistrate's findings and recommendations, and a de novo hearing was scheduled on DCS's dependency and neglect petition. In the meantime, on August 15, 2015, DCS filed a petition for termination of parental rights in the Shelby County Juvenile Court, under the same docket number as the dependency and neglect action, asserting that Mother's parental rights to both children be terminated on the ground of severe abuse.[3] The petition generally alleged the same facts as

---

[1] The documents in the record from the dependent and neglect portion of the trial court proceedings are not in chronological order. In addition, neither party provides appropriate references to where specific documents from the dependency and neglect proceedings, which were submitted as exhibits during trial, may be found in the record on appeal. In order to fully comply with Rules 24 and 27 of the Tennessee Rules of Appellate Procedure, as well as promote judicial economy, especially in expedited termination cases, all parties should make a better effort to identify specific documents and organize the appellate record.

[2] Meconium is "a material that collects in the intestines of a fetus and forms the first stools of a newborn." *Mosby's Dictionary of Medicine, Nursing, & Health Professions* 1105 (9th ed. 2013).

[3] The petition also asserted that the children's biological father's parental rights should be terminated on other grounds. The children's father's parental rights were terminated by order of December 29, 2015. The children's father, however, is not a party to this appeal; therefore, we will generally omit any reference to the proceedings as they relate solely to him.

The petition also alleged the ground of abandonment as to Mother; however, DCS abandoned that

- 2 -

had been alleged in the dependency and neglect petition and indicated the dependency and neglect matter was "currently set for a rehearing." The petition further alleged that one of Mother's older children had previously been adjudicated the victim of severe child abuse for drug exposure on February 3, 2010.

On November 23, 2015, the juvenile court, with Substitute Judge David S. Walker sitting as special judge, conducted a de novo hearing on the dependency and neglect petition. The appellate record does not contain a transcript from that hearing.

The juvenile court, again with Substitute Judge David S. Walker sitting as special judge, conducted a hearing on the termination of parental rights petition on December 10, 2015. A DCS worker testified regarding Mother's positive drug test for marijuana during the children's delivery and the children's later meconium test showing cocaine exposure. According to the DCS worker, a meconium test on the children immediately after their birth revealed that they had been exposed to cocaine. The DCS worker could not explain how Mother tested positive for only marijuana, while the children tested positive for only cocaine.

Mother admitted that cocaine was her "drug of choice," but denied that she had used cocaine once she learned of her pregnancy. In addition, Mother adamantly denied that she used marijuana during her pregnancy. Mother also testified to her ongoing efforts to refrain from drugs, her success at drug rehabilitation programs, and the fact that she had been sober for two years at the time of trial. A DCS worker also testified that after the children's births, all of the urine drug screenings that were administered to Mother came back negative for illegal drug use. Testimony showed, however, that Mother failed two hair follicle drug tests administered in February and June 2015, both of which tested positive for cocaine. Mother testified that in order to dispute the February 2015 positive result, she obtained a private hair follicle drug screen in March 2015, which was negative for illegal drug use.

After the children were removed from Mother's custody, she was allowed supervised visitation. A DCS worker testified that Mother participated in supervised visitation with the children, but that Mother often needed breaks and assistance in caring for the children, that Mother accepted phone calls rather than interacting with the children at times, and that Mother was often hostile and aggressive with adults at the visitations. According to a DCS worker, the children had only a "small bond" with Mother, and it would therefore be detrimental to remove the children from their current home. The children's pre-adoptive father testified to his love for the children, their health and stability in his home, and his desire to adopt the children. At the conclusion of the proof, DCS asked that Mother's parental rights be terminated based upon "two prior severe abuse findings against her," the 2010 severe abuse finding with regard to an older child and the 2015 severe abuse finding by the juvenile magistrate.

ground at trial.

On December 29, 2015, the special judge entered an order on the rehearing in the dependency and neglect action. Relevant to this appeal, the special judge found that:

> The June 18, 2015 order—specifically the ruling of dependency and neglect and severe abuse against [Mother]—was not challenged, and therefore that order is certified as final as to the findings made against [Mother].[4] All parties, including [Intervening Petitioner] and [Mother], stipulated to this on the record.

The special judge also confirmed the denial of the intervening petition.

On the same day, December 29, 2015, the special judge entered a final order on the termination of parental rights petition, terminating Mother's parental rights on the ground of severe abuse. The special judge found clear and convincing evidence that the children were the victims of severe abuse, based upon the prior finding made by the magistrate at the June 18, 2015 hearing. According to the special judge, because Mother "did not file for a rehearing or appeal that matter[,] the order is final as to that issue." The trial court also cited the 2010 finding of severe abuse as to Mother's older child. Finally, the trial court found clear and convincing evidence that termination of Mother's parental rights was in the children's best interests. Mother thereafter filed a timely notice of appeal.

**Issues Presented**

Mother raises three issues for our review, which are taken from her appellate brief:

1. Whether the August 13, 2015 order finding severe abuse was a final judgment, considering that a de novo hearing held in juvenile court on November 23, 2015, requiring the attendance of all the parties, and de novo dispositional hearing?
2. Whether the termination of parental rights is in the best interests of the minor children?
3. Whether it was reversible error for Special Judge Walker to sit as a substitute judge, though the procedures set forth in Tennessee Code Annotated Section 17-2-118 were not followed?

---

[4] The juvenile court and DCS consistently refer to the findings and recommendations of the juvenile magistrate on the dependency and neglect petition as the "June 18, 2015 order." While the order was signed by the trial court on June 18, 2015, it was not filed, nor was a certificate of service affixed thereto, until August 13, 2015.

**Discussion**

As recently explained by the Tennessee Supreme Court:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted).

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates

any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re M.J.B.***, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." ***Id***. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002).

When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *See* ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

## I.

Here, only one ground for termination of parental rights was alleged against Mother at trial: severe abuse pursuant to Tennessee Code Annotated Section 36-1-113(g)(4), which provides that:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian; . . . .

Severe child abuse is defined as, *inter alia*: "The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]" Tenn. Code Ann. § 37-1-102(b)(21).

Here, the juvenile court specifically cited its prior finding of severe abuse at the June 18, 2015 adjudicatory hearing, memorialized in an order filed August 13, 2015, in finding that there was a prior order finding that Mother had committed severe child abuse against the children. Mother argues, however, that because the magistrate's initial finding of severe abuse was pending at the time of the trial on the termination of parental rights petition, the trial court was not entitled to rely on the prior non-final order of severe abuse. In support, Mother cites this Court's Opinion in *In re Shyronne D.H.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097 (Tenn. Ct. App. July 7, 2011), where we held that a finding of severe abuse in a dependency and neglect adjudication was not entitled to preclusive effect in a subsequent termination proceeding where an appeal from the dependency and neglect adjudication was still pending. *Id.* at *7 (noting the general rule that "a judgment is not final and *res judicata* where an appeal is pending").

We need not tax the length of this Opinion with an analysis of whether the trial court was actually entitled to rely on the magistrate's previous finding of severe abuse, as DCS concedes in its appellate brief that the trial court erred in relying on the prior finding of dependency and neglect from the June 18, 2015 hearing before the magistrate. According to DCS's brief:

> [DCS] does not defend the trial court's use of the order of severe abuse against [the children] as res judicata. . . . While it is understandable that the trial court acted upon Mother's stipulation that she did not challenge the severe abuse finding, the dependency-and-neglect order was nonetheless non-final. It could not be used as res judicata [to support the trial court's finding of severe abuse in the termination proceeding.]

Based upon DCS's concession, we will assume, *arguendo* for purposes of this appeal, that the trial court was not entitled to rely on the previous finding of severe abuse made by the magistrate in the dependency and neglect portion of the proceedings.[5]

_____

[5] We note that the issue in this case concerning the finality of the severe abuse finding as part of the dependency and neglect adjudication is further complicated by the fact that, unlike the typical case, the termination of parental rights petition was filed in the juvenile court under the same docket number as the dependency and neglect action. *See e.g., In re Eric J.P.*, No. M2012-02082-COA-R3-PT, 2013 WL 1788547, at *1 (Tenn. Ct. App. Apr. 24, 2013) (involving separate proceedings for the dependency and neglect action and the termination action, one filed in juvenile court and one filed in chancery court); *In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012 (involving separate proceedings, both filed in juvenile court, but separately docketed and appealed); *Shyronne*, 2011 WL 2651097, at *7 (involving separate proceedings for the dependency and neglect action and the termination action, one filed in juvenile court and one filed in circuit court); *In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010) (same).Thus, while a dependency and neglect adjudication and disposition may become final prior to a hearing on a separately filed and docketed termination petition, it does not appear that any final order could result from the this case until

DCS asserts, however, that the trial court's error is not fatal to this appeal, as the trial court was presented with a prior finding of severe abuse as to the children's half-sibling that was final for purposes of *res judicata*. Specifically, DCS cites a February 3, 2010 order adjudicating the children's older half-sibling as the victim of severe abuse by Mother due to drug exposure. According to DCS, the February 3, 2010 final order is sufficient to support the severe abuse finding against the children at issue in this case because Tennessee Code Annotated Section 36-1-113(g)(4) merely requires a severe abuse finding against either "the child who is the subject of the petition or against any sibling or half-sibling of such child." DCS therefore argues that because the February 3, 2010 severe abuse finding is undisputedly a final order against Mother with regard to the severe abuse of the children's half-sibling, the order is entitled to preclusive effect with regard to the severe abuse of the children subject to this appeal.

Neither party offers any caselaw or argument in their briefs regarding the effect of a years-old severe abuse finding during a proceeding to terminate the parental rights of children that were not yet born at the time of the prior abuse and order. We are reluctant to agree with DCS's apparent contention that once a parent is found to have committed severe abuse against one child, that finding may be used *ad infinitum* to support a finding of severe abuse against any children born years later. Caselaw demonstrates that the severe abuse ground is typically applied to a child's sibling where the child who is not the victim of direct abuse had been born prior to the instances of abuse against his or her younger sibling. *See, e.g., **In re Eric J.P.**, No. M2012-02082-COA-R3-PT, 2013 WL 1788547, at *1 (Tenn. Ct. App. Apr. 24, 2013); **State, Dep't of Human Servs. v. Hauck**, 872 S.W.2d 916, 921 (Tenn. Ct. App. 1993). Furthermore, while this Court has held that "the statutory language defining severe child abuse clearly reflects an intent that actions before a child is born can constitute abuse to a child that is born injured by those actions," *see **In re Benjamin M.**, 310 S.W.3d 844, 850 (Tenn. Ct. App. 2009), it stretches credulity to suggest that the children at issue in this appeal were "injured by" Mother's "actions [in committing severe child abuse in 2010] before [the] child[ren] [were] born[.]" **Id.**

In interpreting a statute, however, we are constrained to apply the plain meaning of the words used by the General Assembly. As explained by the Tennessee Supreme Court:

> A court should presume that "the Legislature used each word in the statute purposely and that the use of these words conveys some intent and had a meaning and purpose." **Locust v. State**, 912 S.W.2d 716, 718 (Tenn.Ct.App.1995) (citation omitted); *see*

---

the pending termination petition was finally adjudicated. *See* Tenn. R. App. P. 3(a) (noting that an order that "adjudicated fewer than all the claims" is not a final judgment for purposes of appeal).

> *also* **Bryant v. HCA Health Services of No. Tennessee, Inc.**, 15
> S.W.3d at 809. In sum, "[w]here words of the statute are clear
> and plain and fully express the legislature's intent, there is no
> room to resort to auxiliary rules of construction, and we need
> only enforce the statute as written." **Browder v. Morris**, 975
> S.W.2d at 311 (citations omitted).

**State v. Johnson**, 79 S.W.3d 522, 526 (Tenn. 2002). Here, Tennessee Code Annotated Section 36-1-113(g)(4) specifically states that a ground for termination exists if the parent has been found to have committed severe abuse "under **any** prior order of a court . . . against the child who is the subject of the petition or against any sibling or half-sibling of such child." (Emphasis added). The plain language of the statute does not require that the prior order have any specific temporal proximity or nexus to the current child at issue or the proceedings currently being adjudicated.[6] Based upon the plain language of the statute, there can be no dispute that Mother was found to have committed severe child abuse against the child's half-sibling in the 2010 court order.

In support of our conclusion regarding the plain language of the statute, we note that at least two reported cases have construed Tennessee Code Annotated Section 36-1-113(g)(4) to support a severe abuse finding of the child at issue when the actual abuse of the child's sibling or child residing in the same home occurred prior to the birth of the child at issue in the termination proceeding. *See* **In re Keara J.**, 376 S.W.3d 86 (Tenn. Ct. App. 2012); **In re H.E.J.**, 124 S.W.3d 110 (Tenn. Ct. App. 2003). In **Keara**, an older child was removed from the parents' home due to allegations that the mother failed to disclose her HIV status during the pregnancy with the child and that parents failed to provide the child with proper nutrition and essential care. **Id.** at 89. Mother gave birth to a second child one month after the removal, which child was also removed from the home. **Id.** The trial court eventually terminated parents' parental rights based upon severe abuse as to both children. **Id.** at 93. On appeal, the Court of Appeals first analyzed the evidence presented regarding the severe abuse of the older child, concluding that there was ample evidence that she was the victim of severe abuse at both parents' hands. **Id.** at 102. The Court of Appeals also affirmed the ground of severe abuse as to the younger child due to the severe abuse that parents had committed against the older child prior to the younger child's birth. **Id.** at *107.

---

[6] As previously discussed, termination proceedings implicate parents' fundamental rights. *See* **Carrington**, 483 S.W.3d at 522–23. Where a statute is subject to more than one interpretation, we must interpret the statute so as to sustain its constitutionality. *See* **Ellenburg v. State**, 215 Tenn. 153, 157, 384 S.W.2d 29, 31 (Tenn. 1964). In this case, Mother raises no argument regarding the ambiguity of Tennessee Code Annotated Section 36-1-113(g)(4) or the constitutionality of utilizing the 2010 severe abuse finding as a ground for termination in this case. Accordingly, we need not address these issues. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

Another case, **H.E.J.**, involved rather horrific facts. *See* **H.E.J.**, 124 S.W.3d at 111–12. In **H.E.J.**, a private adoption agency sought to terminate the parental rights of the biological father of twins on the ground of severe abuse to a child that had previously lived in father's home. *Id.* at 111. The petition alleged that the twins were the product of an incestuous relationship between mother and father, who was mother's step-father. *Id.* at 112. There was no testimony presented that father abused the twins. Instead, although testimony at trial indicated that while the twins were born after the mother came of age, father initiated the incestuous relationship when mother was a minor living in his home. *Id.* at 114. The trial court found that clear and convincing evidence existed that father committed severe child abuse against mother while she was a minor living in his home. *Id.* (citing Tenn. Code Ann. § 36-1-113(g)(4) (considering abuse not only to a sibling or half-sibling of the child at issue, but also to "any other child residing temporarily or permanently in the home of such parent or guardian"). On appeal, father argued that the finding of severe abuse with regard to mother was insufficient to sustain a severe abuse finding with regard to the twins because the abuse "did not occur during the lifetime of the twins." The Court of Appeals rejected this argument, however, based upon the plain language of the statute. As the Court explained, father's argument was "an attempt to read into the statute a limitation that is not supported by its text, or by any case of which we are aware." *Id.* at 115. The Court of Appeals therefore affirmed the finding of severe abuse against father as a ground for termination of his parental rights to the twins. *Id.*

Based on the foregoing, we conclude that the severe abuse that Mother committed against her oldest child is sufficient to constitute severe abuse against the children at issue pursuant to Tennessee Code Annotated Section 36-1-113(g)(4). Mother does not assert that the February 3, 2010 order containing the severe abuse finding against her is not final or that her older child should not be considered the child's sibling or half-sibling. *See* Tenn. Code Ann. § 36-1-102(b)(45) (defining a "[s]ibling" as "anyone having a sibling relationship"); -102(46) (defining "[s]ibling relationship" as the biological or legal relationship between persons who have a common biological or legal parent"). As such, the February 3, 2010 order is *res judicata* that Mother committed severe abuse against the twins' sibling or half-sibling. *See* **In re Dakota C.R.**, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012) (holding that "the doctrine of *res judicata* [] prevent[s] a parent from re-litigating whether she committed severe child abuse in a later termination of parental rights proceeding, when such a finding had been made in a previous dependency and neglect action"). Because a final order of severe abuse against the twins' sibling or half-sibling is sufficient under Tennessee Code Annotated Section 36-1-113(g)(4) to also find that severe abuse has been met as to them, the trial court did not err in finding that the ground of severe abuse had been proven by clear and convincing evidence in this case.

**II.**

When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id*. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. These factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

- 11 -

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). This Court has noted that, "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M. A. R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*In re Audrey S.*, 182 S .W.3d at 878 (citing *White v. Moody*, 171 S.W.3d at 194).

Here, the trial court found that Mother has failed to make an "adjustment of circumstances" or a "lasting adjustment" that would make it safe for the children to return to her care. *See* Tenn. Code Ann. § 36-1-113(i)(1),(2). The evidence does not preponderate against this finding. Specifically, while Mother maintained that she has been sober since completing drug rehabilitation, the trial court specifically found that Mother was not credible. Furthermore, Mother failed two hair follicle drug tests in February 2015 and June 2015. Mother testified that she had "theories" as to why the tests resulted in positive findings despite her testimony that she was not using drugs, but she declined to explain these theories to the trial court. Mother's failure to maintain her sobriety is heightened by her testimony that she has abused drugs on and off since she was a teenager and that her older child was likewise removed from her custody due to drug use. Under these circumstances, the trial court did not err in finding that Mother had not made a lasting adjustment in circumstances.

The trial court also found that the children have no meaningful relationship with Mother, despite the fact that she has maintained regular visitation with the twins. *See* Tenn.

- 12 -

Code Ann. § 36-1-113(i)(3),(4). The trial court further found that changing caretakers would have a detrimental effect on the twins. *See* Tenn. Code Ann. § 36-1-113(i)(5). Again, we agree. Here, Mother has attended supervised visitation with the children as allowed by DCS. The children, however, were removed from Mother's care almost immediately after their births. A DCS worker testified that during the visits Mother often requires multiple breaks and assistance in taking care of the children. Once, because one child was "fussy," the child was "left behind" by Mother with another adult while Mother attended only to the other child. The children now reside with a foster family who hopes to adopt the children and who consider the children part of their family. Nothing in the record indicates that the foster family is unable to care for both children. A DCS worker testified that the twins have a "small bond" with Mother, but that changing caretakers would have a detrimental effect on the children.

Based on the totality of the circumstances, we cannot conclude that the trial court erred in finding that termination of Mother's parental rights was in the children's best interests. Here, the children were removed from Mother at such a young age that no meaningful parent-child relationship has formed. Additionally, DCS presented ample evidence that Mother's attempts to remain drug-free have not yet resulted in a lasting change. Finally, the evidence shows that the twins are in a healthy and loving home that presents an excellent hope for stability. As such, the trial court correctly determined that termination of Mother's parental rights was appropriate.

### III.

Finally, Mother asserts that the juvenile court proceedings were fatally flawed because they were presided over by a substitute judge that was not properly appointed pursuant to Tennessee Code Annotated Section 17-2-118. In Mother's brief, however, Mother states that:

> Considering the authority [on this issue previously cited in Mother's brief], [Mother] has been unable to find one case in which a defective appointment of the "Special Judge" in the Juvenile Court of Shelby County has been found to be reversible error. In fact, it appears that every time it is challenged, th[e] Court [of Appeals] finds that the substitute Judge is acting as a de[]facto Judge. In light of the foregoing, it is the position of [Mother] that Special Judge Walker was acting as a de[]facto Judge.

The Tennessee Supreme Court defined a *de facto* judge in ***Ferrell v. Cigna Property & Casualty Insurance Co.***, 33 S.W.3d 731 (Tenn. 2000), stating:

> A judge *de facto* is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes. . . . A judge who actively assumes the duties of his office after he has been appointed by the governor of the state, or has been elected by the people, is at least a *de facto* judge even though facts aliunde might disclose irregularities in the appointment or the election. A judge *de facto* is a judge de jure as to all parties except the state, and his official acts are binding on third persons and the public.

*Ferrell*, 33 S.W.3d at 739 (quoting *State ex rel. Newsom v. Biggers*, 911 S.W.2d 715, 718 (Tenn.1995) (internal citations and quotation marks omitted)).  The *Ferrell* Court further held that because of the special judge's *de facto* power, any irregularity in his appointment did not constitute reversible error. *Ferrell*, 33 S.W.3d at 739. Accordingly, it appears that Mother concedes that, although Special Judge Walker was purportedly not properly appointed, he had *de facto* power to preside over this case and his appointment is not reversible error. As such, any argument that Special Judge Walker's appointment does in fact constitute reversible error is waived.

### Conclusion

The judgment of the Shelby County Juvenile Court is reversed in part and affirmed in part. The termination of Mother's parental rights is affirmed and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Melissa G.A., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 14 -