
# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 28, 2023 Session

## IN RE NATION F.

**Appeal from the Juvenile Court for Carroll County**
**No. 20JV8452    John W. Whitworth, Judge**

_____

### No. W2023-00510-COA-R3-PT

_____

This is a termination of parental rights case. The trial court terminated Mother's and Father's parental rights on the ground of severe child abuse, and on its finding that termination was in the child's best interest. The trial court also terminated Father's rights on the additional ground that he was sentenced to incarceration for more than ten years when the child was under eight years of age. Mother and Father appeal. Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jasmine McMackins Hatcher, McKenzie, Tennessee, for the appellant Brittany F.[1]

Samuel W. Hinson, Lexington, Tennessee, for the appellant Zachary F.[2]

Jonathan Skrmetti, Attorney General and Reporter, and Carrie A. Perras, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

[2] Father waived oral argument before this Court.

## OPINION

## I. Background and Procedural History

Brittany F. ("Mother") and Zachary F. ("Father," and together with Mother, "Appellants," or "Parents") are the biological Parents of Nation F. (the "Child"), who was born in February 2016. In August 2019, Nation, who was three years old at the time, was found playing outdoors unsupervised.[3] Mother was found asleep, was difficult to arouse, and tested positive for methamphetamine, amphetamine, and buprenorphine. She was arrested and charged with child endangerment and possession of a controlled substance. Additionally, two handguns and a rifle were found in the home, and Father, a convicted felon, was arrested and charged with three counts of possession of a weapon and possession of a stolen weapon. Further, Father admitted to taking Mother's prescription for suboxone. Nation, who tested positive for methamphetamines, was removed to Appellee Department of Children's Services' ("DCS") custody. In October 2021, Father was convicted of unlawful possession of a firearm by a convicted felon and was sentenced to 12-years incarceration.[4]

In December 2019, the Juvenile Court for Carroll County ("trial court") adjudicated Nation dependent and neglected and the victim of severe child abuse.[5] On July 7, 2020, DCS filed a petition to terminate Appellants' parental rights. As grounds, DCS averred failure to provide a suitable home, substantial noncompliance with the permanency plans, persistence of conditions, and severe child abuse. On February 8, 2022, DCS filed an amended petition to add an additional ground for termination of Father's parental rights based on the fact that he had been sentenced to incarceration for a period of ten or more years. DCS also averred that termination of Parents' rights was in the Child's best interest.

---

[3] Mother has six children. She testified that her older children, including two who were removed from her care in August 2019 along with Nation, were living with their fathers when this matter was heard in 2023. Nation is the only child at issue in this case.

[4] In June 2022, Mother was convicted of attempted child endangerment stemming from the events leading to the removal of the Child. According to Mother's testimony, she was sentenced to four years of "community correction," including one year of outpatient rehabilitation. Mother testified that she was on probation at the time of trial.

[5] Parents appealed the adjudication, and the matter was heard *de novo* by the Circuit Court. By order of July 16, 2021, the Circuit Court found the Child to be dependent and neglected and the victim of severe abuse because he had methamphetamine in his system, which the court attributed to Parents' actions. As the Circuit Court noted, Parents periodically refused court-appointed counsel, and filed numerous pro se motions, which were all subsequently abandoned.

The trial court conducted a hearing on February 10 and 14, 2023. At the beginning of trial, DCS announced that it would proceed on only two grounds: severe child abuse with respect to both Parents, and incarceration for ten or more years with respect to Father. On March 28, 2023, the trial court entered its final order, wherein it terminated both Parents' rights on the ground of severe child abuse. The trial court also terminated Father's parental rights on the additional ground that he was sentenced to incarceration for ten or more years. The trial court also determined that termination of Parents' rights was in Nation's best interest. Parents appeal.

## II. Issues Presented

Mother presents the following issues for review, as stated in her brief:

1. Whether the trial court used the incorrect best interest factors in the analysis to terminate the Mother's parental rights.

2. Whether the trial court erred in finding best interest to terminate the parental rights of the Mother . . . who was free of substance abuse, maintaining visitation and a relationship with the child, employed, and with suitable housing at the time of the hearing?

Father raises the following issue in his brief:

Whether the trial court erred in finding that it was in the best interest of the minor [Child] to terminate [Father's] parental rights?

Although neither Mother nor Father raises a specific issue concerning the grounds for termination of their respective parental rights, this Court is obligated to review the grounds pursuant to the directive of the Tennessee Supreme Court as set out in *In re Carrington H.*, which states that "the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, **regardless of whether the parent challenges these findings on appeal**." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016) (emphasis added).

## III. Standard of Review

It is well-settled that:

A parent's right to the care and custody of [his or] her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clause of the federal and state constitutions. *Troxel v.*

*Granville*, 530 U.S. 57, 65 (2000); ***Stanley v. Illinois***, 405 U.S. 645, 651 (1972); ***In re Angela E.***, 303 S.W.3d 240, 250 (Tenn. 2010); ***In re Adoption of Female Child***, 896 S.W.2d 546, 547-48 (Tenn. 1995); ***Hawk v. Hawk***, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. ***In re Angela E.***, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." ***Hawk***, 855 S.W.2d at 580 (quoting ***In re Hamilton***, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); ***see also Santosky v. Kramer***, 455 U.S. 745 (1982); ***In re Angela E.***, 303 S.W.3d at 250.

***In re Carrington H.***, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted).

Termination of parental rights proceedings are governed by statute in Tennessee, ***In re Kaliyah S.***, 455 S.W.3d 533, 541 (Tenn. 2015), and the statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." ***In re Jacobe M.J.***, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting ***In re W.B.***, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))) (internal quotation marks omitted).

Tennessee Code Annotated section 36-1-113 governs the termination of parental rights. It provides, in pertinent part:

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c). Therefore, every termination of parental rights case requires the trial court "to determine whether the parent has engaged in a course of action or inaction that constitutes one of the statutory grounds for termination[,]" and whether termination of the parent's rights is in the child's best interest. ***In re Donna E.W.***, No. M2013-02856-COA-R3-PT, 2014 WL 2918107, at *2 (Tenn. Ct. App. June 24, 2014). "Because the stakes are so profoundly high[ ]" in a termination of parental rights case, the statute "requires persons seeking to terminate a . . . parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence." ***In re Audrey S.***, 182

S.W.3d 838, 861 (Tenn. Ct. App. 2005). This Court has observed that "[t]his heightened burden of proof minimizes the risk of erroneous decisions." **Id.** (citations omitted).

If the trial court determines that clear and convincing evidence supports grounds for termination in light of its factual findings, the court "should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." **In re Kaliyah S.**, 455 S.W.3d at 555. The party petitioning for the termination of parental rights bears the burden of demonstrating that termination is in the best interest of the child by clear and convincing evidence. **In re Angela E.**, 303 S.W.3d 240, 250 (Tenn. 2010).

We review the trial court's findings of fact *de novo* on the record with a presumption of correctness. Tenn. R. App. P. 3; **In re Carrington H.**, 483 S.W.3d at 524 (citations omitted). However, "[i]n light of the heightened burden of proof in termination proceedings . . . [we] must make [our] own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." **Id.** (citation omitted). A trial court's conclusion that clear and convincing evidence supports termination of parental rights is a conclusion of law that we review *de novo* with no presumption of correctness. **Id.** (citation omitted). "This standard of review is consistent with the standard of review for mixed questions of law and fact." **In re Taylor B.W.**, 397 S.W.3d at 112-13 (citing **Starr v. Hill,** 353 S.W.3d 478, 481-82 (Tenn. 2011)) ("Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination of the legal effect of its factual findings[.]").

## IV. Grounds for Termination of Parental Rights

### A. Severe Child Abuse

Pursuant to Tennessee Code Annotated section 36-1-113(g)(4), the trial court terminated Parents' rights on the ground of severe child abuse. Tennessee Code Annotated section 37-1-102(b)(27) defines "severe child abuse," in relevant part as:

(E) Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child; or

(F) Knowingly allowing a child to be within a structure where any of the following controlled substances are present and accessible to the child:

(i) Any Schedule I controlled substance listed in § 39-17-406;
(ii) Cocaine;
(iii) Methamphetamine; or
(iv) Fentanyl;

When DCS became involved with Nation in 2019, Mother admitted to using methamphetamine and opioids, and she tested positive for methamphetamine, amphetamine, and buprenorphine. In 2018, Mother began treatment at a suboxone clinic for her addiction to opioids. Father admitted to using methamphetamine and to taking Mother's suboxone prescription. Parents do not dispute that they have an extensive history of drug abuse. It also is undisputed that Nation tested positive for methamphetamine while he was in the care and custody of Parents. Based on these undisputed facts, there is clear and convincing evidence to support the trial court's termination of Parents' rights on the ground of severe child abuse.

### B. Father's Incarceration

The trial court also terminated Father's parental rights pursuant to section 36-1-113(g)(6), which provides that parental rights may be terminated if:

(6)(A) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court; or

(B) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of one (1) or more criminal acts, under a sentence of six (6) or more years, and one (1) or more other grounds within this subsection (g) have been satisfied[.]

Here, the trial court found that

[t]he respondent [Father] was convicted of unlawful possession of a weapon while having a prior felony conviction and sentenced on October 25, 2021, to 12 years in the Tennessee Department of Correction[]. Judgment filed as trial exhibit 1-24. At the time of removal, the minor child Nation [] was less than 8 years of age and therefore the Department of Children's Services has proven Ground 5 10-year sentence as a basis of the Termination of the Parental Rights of the respondent [Father].

The fact of Father's 12-year incarceration is undisputed and supported by the record. It is also undisputed that Nation was "less than 8 years of age" at the time of Father's

incarceration. As such, there is clear and convincing evidence to support the trial court's termination of Father's parental rights on this additional ground.

Having concluded that clear and convincing evidence supports the trial court's determination with respect to the grounds for termination of Parents' rights, we turn to review the trial court's determination that termination of Parents' rights is in Nation's best interest.

## V. Best Interest

If the trial court determines that clear and convincing evidence supports grounds for termination of parental rights, the court must then determine whether termination is in the child's best interest. *In re Kaliyah S.*, 455 S.W.3d at 555. Tennessee Code Annotated section 36-1-113(i)(1) contains a non-exclusive list of factors applicable to the court's best-interests analysis. The statute provides:

(i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court.

The statutes recognize that, notwithstanding clear and convincing evidence of grounds, termination of parental rights is not always in the child's best interest. *In re I.E.A.*, 511 S.W.3d 507, 517 (Tenn. Ct. App. 2016). Whether termination is in the child's best interest must be "'viewed from the child's, rather than the parent's, perspective.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (quoting *In re Audrey S.*, 182 S.W.3d at 878). "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child[.]" *Id.* (quoting Tenn. Code Ann. § 36-1-101(d) (2017)). The court's "'focus on the perspective of the child is the common theme' evident in all of the statutory factors." *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (quoting *In re Audrey S.*, 182 S.W.3d at 878).

The best-interest analysis requires "more than a 'rote examination' of the statutory factors." *Id.* at 682 (quoting *In re Audrey S.*, 182 S.W.3d at 878). Further, it "consists of more than tallying the number of statutory factors weighing in favor of or against termination." *Id.* Although the trial court must consider all the statutory factors and other relevant proof, one factor may be determinative of the best-interest analysis in light of the circumstances surrounding the particular child and parent. *Id.* The trial court's factual findings relevant to the best-interest analysis must be supported by a preponderance of the evidence. *In re Kaliyah S.*, 455 S.W.3d at 555. The trial court must also determine whether the combined weight of the facts amounts to clear and convincing evidence that it is in the child's best interest to terminate parental rights. *Id.*

The Tennessee General Assembly amended the statutory best-interest factors in 2021. *See* 2021 Tenn. Pub. Acts ch. 190 § 1 (S.B. 205), eff. Apr. 22, 2021. These factors now include:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the

circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

***

 (O) Whether the parent has ever provided safe and stable care for the child or any other child;
(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;
(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;
(R) Whether the physical environment of the parent's home is healthy and safe for the child;
(S) Whether the parent has consistently provided more than token financial support for the child; and
(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

Tenn. Code Ann. § 36-1-113(i) (2022).

Because DCS filed the petition to terminate Appellants' parental rights on July 7, 2020, Mother argues that the trial court erred in using the foregoing amended best-interest factors applicable to petitions to terminate parental rights filed on or after April 22, 2021. She argues that if the trial court had applied the statutory factors applicable to DCS's July 2020 petition, it would not have determined that termination of her parental rights is in Nation's best interest. Here, however, DCS filed an amended petition on February 8, 2022. As in the instant case, in *In re Skylith F., et al.*, No. M2022-01231-COA-R3-PT, 2023 WL 6546538, at *17 (Tenn. Ct. App. Oct. 9, 2023), "[b]etween the filing of the initial petition and the amended petition, the statutory best interest factors underwent revision." *Id.* at *17. In *Skylith F.*, we upheld the trial court's use of the revised best interest factors even though the older version was in effect at the time of the filing of the original petition. *Id.* However, even allowing, *arguendo*, that the trial court should have applied the previous iteration of the best interest factors, this Court has held that there is no reversible error when the trial court relies on the wrong best-interest factors because the old factors are essentially contained within the new factors. *See In re Da'Moni J.*, No. E2021-00477-COA-R3-PT, 2022 WL 214712, at *23 (Tenn. Ct. App. Jan. 25, 2022), *perm. app. denied* (Tenn. Apr. 1, 2022) ("We agree with the Juvenile Court that the best interest factors relevant to this case are included in the new version of factors that went into effect in April 2021."); *see also In re Bralynn A.,* M2021-01188-COA-R3-PT, 2022 WL 2826850, at *9 (Tenn. Ct. App. July 20, 2022), *perm. app. denied* (Tenn. Aug. 12, 2022). As the Tennessee

Supreme Court has observed, the statutory factors contained in both the current and the former iterations of section 36-1-113(i) are not exclusive. *In re Gabriella D.*, 531 S.W.3d at 681. Rather, the factors are "illustrative . . . and any party to the termination proceeding is free to offer any other factor relevant to the best interest analysis." *Id.*; *see also In re Emarie E.*, No. E2022-01015-COA-R3-PT, 2023 WL 3619594, at *9 (Tenn. Ct. App. May 24, 2023). Additionally, this Court has noted that a trial court's application of the previous factors together with the new factors is not error if the factors considered are relevant to the facts presented by the case. *In re Mitchell B.*, No. M2022-01285-COA-R3-PT, 2023 WL 3619561, at *6 (Tenn. Ct. App. May 24, 2023). Because the statutory factors are not exclusive, regardless of which version of the statute is applicable, if the trial court's findings are sufficient to allow us to "make a meaningful review" of its best-interest determination, then remand is unnecessary. *Id.* That is the case here where the trial court made detailed findings that permit meaningful review of its conclusion. Specifically, in its March 14, 2023 order, the trial court made the following findings concerning Nation's best interest:

(A) Due to Nation's autism and mental health diagnosis, he needs a structured routine which has been developed in the home of the foster parents. He has established counselors and needed stability in that home. Returning him to his natural [P]arents would have a detrimental effect to the child's stability and continuity of placement.

(B) Testimony of Nation's counselor and caseworker all agree and the Court finds that a change of caretakers at this time would be devastating to Nation's emotional and psychological condition.

(C) [Father] has not demonstrated any willingness to provide Nation with his basic needs and while [Mother] has made great strides in putting herself in a position to provide for these needs, she has only done so in the last year while the foster parents have provided for these needs for the past 3 ½ years.

(D) [Mother] has maintained contact with Nation [F.] as allowed but the Court finds that the relationship created was a friendship and not a Parental Bond that Nation needs for his development.

(E) [Mother] has maintained regular visits with Nation F[.] as Ordered by the Court, and has developed a bond described as a friendship with him.

(F) Due to Nation's age at removal he has no memory of being in his [P]arents' home and no fears of it.

(G) Nation's visits with his mother [Mother] triggered a reaction to past trauma in his life.

(H) Nation F[.] has been in the home of the foster parents for 3 ½ years and has developed a close parental bond with them.

(I) The foster parents have 3 older children that proof showed have also bonded with Nation and are important to his stability and development.

(J) The court feels that [Mother] has made changes to her life that would

- 10 -

allow her to provide a home for Nation but that she did not make those changes until 3 years after Nation went into custody.

(K) [Mother] has continuously refused to enter an in-house drug treatment program despite recommendations to do so. To the Court she appears to be clean from drugs except for the suboxone treatment program that she is in.

(L) The Court finds that the Department of Children's Services initially made reasonable efforts to reunite the [P]arents with their child Nation, but until recently the [P]arents fought those efforts and failed to take advantage of the drug and alcohol treatments that were necessary for their recovery. After the Department filed a Petition to Terminate the Parental Rights of the [P]arents they ceased efforts to reunify Nation with his [P]arents and simply facilitated the visits Ordered by the Court. The Court finds that the Department did provide services in the home of the foster parents to bolster his development.

(M) As discussed above the [P]arents failed to demonstrate any urgency in seeking return of Nation until [Father] was incarcerated and [Mother] began to work toward a return.

\*\*\*

(0) [Mother] may have had periods of caring for her children but testimony reflects that her 6 children have been removed from her home and none reside with her.

(P) [Mother] has visited with Nation for more than a year and during visits has played with him but failed to realize the specific needs he has as a result of his mental and psychological condition.

(Q) [Mother] has maintained a physical home that would be suitable for Nation's needs.

(R) [Mother's] home now seems healthy and safe for Nation.

(S) The $25.00 per month financial support provided by the [P]arents is only token and they have provided little extra.

On appeal, Mother asserts that the trial court failed "to recognize the significance of [her] progress." She also argues that the trial court downplayed her relationship with Nation and focused too heavily on the amount of time he has been in foster care. Father argues that "there is still plenty of love between the [Child] and [Parents]." He asserts that his abuse of illegal drugs and his current incarceration are "temporary struggles," which can be "overcome."

Turning to the record, it is undisputed that, when the Child was removed from Parents' care in 2019, he was 3 ½ years old and tested positive for methamphetamines. He was placed in a therapeutic foster home and has been diagnosed with Autism, ADHD, Anxiety Disorder, delayed speech and language, and PTSD. Nation has remained in the

- 11 -

same therapeutic foster home since his removal from Parents' custody. The record shows that he has formed strong bonds with his foster parents and foster siblings. Furthermore, the foster parents wish to adopt him. Nation's foster parents ensure that he receives speech and occupational therapy, behavioral counseling, and mental health counseling. The trial court found that, although his behavior has improved in foster care, Nation "still requires structured routines and consistency," and "[v]ariations from [his] normal routine cause increased hyper activity and anxiety." The record supports these findings.

The trial court also found that Father "has not demonstrated any willingness to provide Nation with his basic needs." Indeed, due to his incarceration and the fact that Nation was so young when that occurred, there is no bond between the Child and Father. Furthermore, Father's predicament renders him unable to care for the Child, and it is unlikely that Father will be able to do so at any early date.

Concerning Mother, the trial court concluded that, "while [Mother] has made great strides in putting herself in a position to provide for [the Child's] needs, she has only done so in the last year while the foster parents have provided for these needs for the past 3½ years." Furthermore, the trial court found that although Mother exercised visitation, the visits were more like "playdates" that consisted largely of playing video games on Mother's phone. More importantly, the trial court found that Nation's "twice monthly visits with his [M]other resulted in a worsening of his behaviors described as Nation becoming more assertive and hyper after those visits." As such, the court concluded that there is not a "[p]arental [b]ond [with Mother] that Nation needs for his development." Specifically, the trial court determined that, after more than three years in foster care, Nation has no memory of Parents' home but his visits with Mother nevertheless "triggered a reaction to past trauma in his life." The trial court found that returning Nation to Mother's care would have a detrimental effect that "would be devastating to Nation's emotional and psychological condition." The record supports these findings.

Concerning the primary reason for the Child's removal from Parents' custody, *i.e.,* Parents' drug use and Nation's exposure to same, the trial court noted that, although Mother "appear[ed] to be clean from drugs except for the suboxone treatment program that she is in[,]" she "continuously refused to enter an in-house drug treatment program despite recommendations to do so." In fact, the court found that Mother continued to use methamphetamine until Father was incarcerated. The court noted that the "parents cooperated with the Department to complete all of the requirements **except for those related to their drug use**" (emphasis added). From our review, the record supports the trial court's determination that Parents were uncooperative with DCS's requirement that they submit to drug testing. Unfortunately, Parents' drug use was the primary reason for the Child's removal, and there is insufficient proof to show that the problem has been properly addressed. Indeed, Mother, who was 33 years old at the time of the hearing, testified that she had been "clean" for only a year-and-a-half during the preceding 12 years.

Mother explained that she should have been weaned off the suboxone and nyloxin she was taking to treat her addiction, but admitted that:

> The initial plan was to start weaning me off like a year ago, but with my recovery status just being so all over the place, [Mother's provider] was not comfortable with taking me off of [suboxone and nyloxin]. But I am in a spot, I have been clean for a year, no mess-ups . . . so [Mother's provider] will be willing to give me the shot to start weaning me off of Suboxone. The only concern [Mother's provider] has is the state of this case. He knows what a trigger it could be and how devastating it could be to lose my son. And with us being in this limbo for so long, . . . [Mother's provider] couldn't take the risk [of stopping the suboxone prescription].

Mother's testimony supports the trial court's finding that, although Mother "has made strides in her own life," she has "failed to demonstrate a sense of urgency immediately following removal which might have allowed an early return to her custody." In short, the record supports the trial court's finding that, at present, Mother's sobriety is unproven.

Meanwhile, as discussed above, Nation has found stability in his foster home. As the trial court found:

> Nation only knows the foster parents as his parents and has developed that parental bond with them. All evidence points to the fact that his bond with his mother is more of an acquaintance or friend and not a parent and he has no bond with his father []. Removing Nation from the home of the foster parents at this time would have an adverse effect on his emotional and psychological condition and would cause a setback in the progress he has made. Nation has no memory of the parents' home and visits with his mother trigger responses to traumas believed to have occurred earlier in that home, a return there would be detrimental.

These findings are supported by the record. Furthermore, based on the fact that Nation's interactions with Mother trigger negative responses, we agree with the trial court's determination that returning him to Mother's custody would be emotionally and psychologically "devastating." This is especially so in view of Nation's diagnoses of Autism, ADHD, Anxiety Disorder, delayed speech and language, and PTSD, and his need for safety and stability. Tenn. Code Ann. § 36-1-113(i)(2) ("When considering the [best interest] factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). Thus, when considering the facts and the best-interest factors from the Child's perspective, we conclude that the evidence does not preponderate against the trial court's factual findings, and the combined weight of the facts amounts to clear and convincing evidence that termination of

Parents' parental rights is in Nation's best interest.

## VI. Conclusion

The trial court's order terminating Parents' respective parental rights to Nation F. is affirmed, and the case is remanded for further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed one-half to appellant, Zachary F., and one-half to appellant, Brittany F.  Because both Appellants are proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE