# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs August 2, 2016

# IN RE: ZACHARIAH G.

**Appeal from the Juvenile Court for Rutherford County**
**No. TC2519T     Donna Scott Davenport, Judge**

—————

**No. M2015-02350-COA-R3-PT – Filed September 8, 2016**

—————

This appeal concerns a termination of parental rights. The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Rutherford County ("the Juvenile Court") seeking to terminate the parental rights of Brooke G. ("Mother") to the minor child Zachariah G. ("the Child"). After a trial, the Juvenile Court entered an order finding the grounds of severe abuse and abandonment by wanton disregard by clear and convincing evidence and finding also that termination of Mother's parental rights is in the Child's best interest. Mother appeals to this Court. We affirm the judgment of the Juvenile Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

Ronald Aubrey Wilson, Murfreesboro, Tennessee, for the appellant, Brooke G.[1]

Herbert H. Slatery, III, Attorney General and Reporter, and, Rachel E. Buckley, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

---

[1] The Tennessee Supreme Court suspended Carla Kent Ford's license to practice law upon finding that she had been convicted of a serious crime. In May 2016, we entered an Order removing Ford from this case as attorney for Mother and remanded the case to the Juvenile Court for the limited purpose of appointing new counsel for Mother. This all happened some time after Ms. Ford submitted a brief on Mother's behalf. Mother's new appointed counsel on appeal is Ronald Aubrey Wilson.

# OPINION

## Background

The Child was born to Mother in March 2014. Mother had four children before the Child and has surrendered her parental rights to all four of them. In November 2012, the Montgomery County Juvenile Court found that Mother had severely abused the Child's half-brother. The severe abuse stemmed from a car accident in which the Child's half-brother's premature birth was induced when Mother wrecked a vehicle while intoxicated. In June 2014, DCS received a referral that the Child's purported father was failing to supervise the Child. An investigation ensued. The Child had been living with Mother and her mother in an apartment complex. DCS established a non-custodial permanency plan requiring Mother to meet certain requirements, such as obtain a crib.

Mother was arrested in August 2014 for failure to appear. The Child then entered DCS custody. Days after Mother's September release, she was incarcerated for public intoxication. Mother eventually pled guilty to public intoxication. A new permanency plan was ratified for Mother in October 2014. In December 2014, the Juvenile Court entered an order finding the Child dependent and neglected. The Juvenile Court also entered an order reflecting that a DNA test proved that the Child's purported Father was not his biological father, despite Mother's strong assertions that he was. Mother then identified another man as the potential father. In January 2015, DCS filed a petition in the Juvenile Court seeking to terminate Mother's parental rights to the Child.

Mother remained incarcerated through March 2015 when she then was furloughed to Synergy Treatment Center. In April 2015, Mother was expelled from Synergy for sharing her medication with another patient. Mother was supposed to return to jail. Instead, Mother went to live with her mother, who died from a drug overdose in mid-2015. Following her mother's death, Mother went to live with the Child's purported father and his mother. In July 2015, Mother received a citation for failing to yield to traffic as she walked across a street. The police discovered that Mother had an outstanding warrant, and Mother was returned to jail. Mother was charged with escape.

This termination matter was tried over the course of two days in September 2015. We will summarize the pertinent testimony. Mother stated that she had no contact with the Child since August 28, 2014. Mother testified that her incarceration prevented her from visiting the Child. Mother testified further that she still has a bond with the Child, although she suspected the Child no longer has a bond with her. Mother acknowledged that she never sought to set up visitation with the Child through an agency. Continuing her testimony, Mother acknowledged that she had a drug problem. Mother stated, however, that she had been drug-free for over six months. Mother was

unemployed as of trial, although she stated she had submitted applications at various establishments.

The Child's foster father testified as well. According to the foster father, the foster family has the financial and emotional wherewithal to raise the Child. The foster father testified that his family is willing to adopt the Child.

In November 2015, the Juvenile Court entered its final judgment terminating Mother's parental rights to the Child. The Juvenile Court found and held that clear and convincing evidence supported the grounds of severe abuse by prior order and wanton disregard. The Juvenile Court also found by clear and convincing evidence that it is in the Child's best interest for Mother's parental rights to be terminated. The Juvenile Court, in its detailed final judgment, stated in relevant part:

Mother's criminal record was admitted as Exhibit 29 and speaks for itself. Mother, per her own testimony, has picked up charges for public intoxication, reckless endangerment, theft, and failure to appear. Mother, as previously noted, per Exhibit 22, committed Severe Abuse against Zachariah's half sibling, Nehemiah, by her use of drugs while the Child was in utero, specifically Nehemiah, at birth, tested positive for methadone, cocaine, benzos, and marijuana (THC), which caused Nehemiah to experience withdrawal symptoms for over a month. Mother attempted to escape from a furlough drug treatment program. Mother sits here today with pending criminal charges. The Court being the trier of fact gives very little weight to the testimony of the Mother. The Court finds Mother has misled this Court not just once but many times, and further there have been inconsistent statements, specifically but not limited to the testimony Mother provided regarding rent, bills paid, etc., and that the same was in direct conflict with the testimony of Mr. [F.] (Mother's paramour). When this matter was before the Court on September 17, 2015 for day 1 of the trial the Mother testified that she was getting her GED and that she has completed parenting classes and yet Mother has failed to provide any proof or documentation to support her assertions. Mother further made the inconsistent statement that she was starting a new IOP (Intensive Outpatient Treatment) but has failed to provide any documentation to support her assertion. One of the Court's biggest concerns is the fact that earlier this year the Mother was kicked out of a treatment program that she had been furloughed to as part of her criminal rehabilitation and she was inconsistent about what happened there and exactly how long she had been there; with the proof showing that Mother had only been in treatment from March 3, 2015 through April 28, 2015 which conflicted with Mother's early

-3-

testimony. So Mother was only in treatment for 6 weeks before she was expelled from the program due to the Mother providing prescription drugs to other patients. Therefore based upon all of the aforementioned and the totality of the proof admitted and the record in this matter, the Court finds the Mother abandoned the Child, Zachariah, by engaging in conduct prior to her incarceration that exhibited a wanton disregard for Zachariah.

\*\*\*

On October 29, 2012, the Juvenile Court of Montgomery County, Tennessee at Clarksville, as memorialized by an Order filed November 8, 2012, . . . , admitted as Exhibit 22, found that the Mother, [Mother], committed Severe Abuse, pursuant to T.C.A. § 37-1-102 (b)(23)(A) {now (b)(21)(A)}, against her Child, Nehemiah . . . . Said Order was never appealed and the time to appeal having expired, the Order is a final Order. Nehemiah is a half-sibling of the Child, Zachariah . . . .

\*\*\*

The first factor is whether the parent has made such an adjustment of circumstances, conduct or conditions to make it safe and in the best interests for the child to return to the parent's care and home. The Court finds Mother has completely failed to make any adjustment; that the Mother has failed to provide any proof or documentation that she has completed the permanency plans admitted as Exhibits 1 and 2. The Mother had been furloughed by the Montgomery County Criminal Court to a one year intensive drug treatment program and the Mother only made it six weeks before being released due to her providing prescription drugs to other patients. Mother sits here today with absolutely no proof that she is addressing or attempting to address her substance abuse issues. Therefore the Court finds that Mother has failed to make an adjustment in her conduct and conditions to make it safe and in the best interests of Zachariah to return to the Mother's care, home and control. Therefore the Court finds that under the first factor it is in Zachariah's best interests to terminate Mother's parental rights.

\*\*\*

The third best interest factor, whether the parent or guardian has maintained regular visitation or contact with the Child. The Mother has been in and out jail multiple times during the time period while Zachariah has been in custody. Based upon the testimony presented it appears from

August 28, 2014, through the trial of this matter, September 29, 2015, that Mother was incarcerated during this time with the exception of about 3 to 3 1/2 months. During the months that Mother was not incarcerated she had every right to visit and could have exercised visitation but failed to make any effort whatsoever to visit with Zachariah. Mother has had no contact with Zachariah for 13 months. Mother made no effort to visit. Mother used the excuse that during one of those 3 months she did not visit due to her Mother passing away. When Mother was questioned about her failure to visit there were, again, inconsistencies in her testimony and as such the Court, again, gives very little credibility to the Mother's testimony. Therefore the Court finds it is in the best interest to terminate Mother's parental rights because she has not maintained regular visitation with Zachariah.

***

The next best interest factor being whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner. Based upon the proof admitted the Court has concerns for the Mother's residential stability. She is currently residing with her paramour, Mr. [F.], and he and his Mother are providing for Mother's housing and the needs associated with housing. Mother is relying completely upon the kindness of Mr. [F.] and his mother to support her. Mr. [F.] and his mother could kick [Mother] out any time they want to because there is no legal obligation to the Mother to allowing her to reside in their home. Mother and Mr. [F.] have had other children together and they have surrendered over the years to those children, and they have already been adopted or are in the process of being adopted. Further Mother misled the Court when she lied to the Court and to Mr. [F.] and stated that Mr. [F.] was the Father of the Child, which was later proven by DNA testing to be untrue. The Mother is financially unstable and emotionally unstable and as such is unable to provide a suitable home for Zachariah. Therefore, the Court finds, as to this factor, that it is in the best interests to terminate Mother's parental rights to Zachariah.

In conclusion the Court further finds that this Child, Zachariah, only knows his resource/ foster family as his Mother and Father. There is a significant parent-child relationship between Zachariah and his resource

parents. There is a bond between Zachariah and the resource parents. Based upon all of the findings herein the Court finds that it would be in the best interests of Zachariah to terminate the parental rights of Mother [to] allow an Adoption to go forward. Therefore Court grants, vests partial and complete guardianship of Zachariah with the Department of Children's Services, State of Tennessee.

Mother filed an appeal to this Court.

## **Discussion**

We restate the issues Mother raises on appeal as follows: 1) whether the Juvenile Court erred in terminating Mother's parental rights to the Child on the ground of severe abuse; 2) whether the Juvenile Court erred in terminating Mother's parental rights on the ground of abandonment by wanton disregard; and, 3) whether the Juvenile Court erred in finding that termination of Mother's parental rights is in the Child's best interest.

As our Supreme Court recently instructed:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[2] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest,

---

[2] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

but to end it." *Santosky*, 455 U.S. at 759, 102 S.Ct. 1388. "Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787, 102 S.Ct. 1388; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59, 102 S.Ct. 1388. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of "severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759, 102 S.Ct. 1388 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754, 102 S.Ct. 1388; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1-113(c) provides:

Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[3] for termination exists and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[4] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*, 182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id.* This portion of the statute requires a trial court to make "findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and

---

[3] Tenn. Code Ann. § 36-1-113(g)(1)-(13).
[4] Tenn. Code Ann. § 36-1-113(i).

convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id*. If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id*. Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id*. (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

### B. Standards of Appellate Review

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d 507, 521-24 (Tenn. 2016) (footnotes in original but renumbered), *petition for cert. filed sub nom. Vanessa G. v. Tennessee Dep't of Children's Servs.*, ___ U.S. ___ (U.S. April 27, 2016) (No. 15-1317) .

Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Our Supreme Court, however, has instructed "that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of

whether the parent challenges these findings on appeal." *In re: Carrington H.*, 483 S.W.3d at 526-27 (footnote omitted). As such, we review each of the grounds for termination.

We first address whether the Juvenile Court erred in terminating Mother's parental rights to the Child on the ground of severe abuse by prior order. As pertinent, Tenn. Code Ann. § 36-1-113(g)(4) provides:

> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4) (2014).

In the present case, the Child, born March 2014, is the half-sibling of the child found by prior order in November 2012 to have been severely abused by Mother. The November 2012 order from Montgomery County Juvenile Court was not appealed and is final. Neither of these key facts is in dispute. Mother argues instead that she did not appreciate the consequences of the finding of severe abuse, and that this put her at a great disadvantage in this termination case. Respectfully, this will not suffice. We find and hold, as did the Juvenile Court, that the ground of severe abuse by prior order has been proven against Mother by clear and convincing evidence.[5]

We next address whether the Juvenile Court erred in terminating Mother's parental rights on the ground of abandonment by wanton disregard. As pertinent, Tenn. Code Ann. § 36-1-113(g)(1) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

---

[5] Mother did not challenge the constitutionality of Tenn. Code Ann. § 36-1-113(g)(4), and we will not address it. Nevertheless, we have concerns about the rote application of Tenn. Code Ann. § 36-1-113(g)(4) to terminate parental rights to later-born children regardless of time or context. This Court conducted an extensive analysis of this troubling question in *In re: I.E.A.*, No. W2016-00304-COA-PT, 2016 WL 3997421 (Tenn. Ct. App. July 20, 2016), *perm app. pending*. We reiterate that concern here.

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1) (2014).  In pertinent part, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2014).

Mother does not directly contest this issue.  This decision not to address this ground is understandable.  The evidence is far more than clear and convincing that Mother's conduct prior to her incarceration constitutes wanton disregard for the welfare of the Child.  Since the Child's birth, Mother has been in and out of jail.  She has abused drugs.  In short, Mother regrettably has demonstrated no effort to provide the Child with the stability he desperately needs.  On the contrary, Mother seemingly cannot stay out of jail for long.  We find and hold that the ground of abandonment by wanton disregard has been proven against Mother by clear and convincing evidence.

The final issue we address is whether the Juvenile Court erred in finding that termination of Mother's parental rights is in the Child's best interest.  Courts are to consider the factors at Tenn. Code Ann. § 36-1-113(i) in reaching a best interest determination in parental rights cases.  The Juvenile Court made detailed findings concerning the relevant statutory factors, a significant portion of which is quoted above.  The evidence does not preponderate against these findings.  We find, as did the Juvenile

Court, that the evidence is clear and convincing that it is in the Child's best interest for Mother's parental rights to be terminated. We affirm the judgment of the Juvenile Court in its entirety.

## **Conclusion**

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Brooke G., and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE